UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:20-CR-15-PPS-JEM |
| ) | |
| LAVELLE HATLEY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

In January of 2020, Mr. Hatley was pulled over by a Lake County Deputy Sheriff after speeding without wearing a seatbelt. Once his car was pulled over, Hatley fled his car on foot and ran behind a house. [DE 67 at 3]. Detectives searched the area, located Mr. Hatley, and placed him under arrest. During a search of his person incident to arrest, a loaded Smith & Wesson revolver was found in his waistband. [*Id*. at 4]. On February 19, 2020, Hatley was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1). [DE 1]. In November 2020, Hatley entered a plea agreement with the Government in which he pled guilty to being a felon in possession of a firearm. [DE 33]. Following his guilty plea, Hatley and the Government engaged in briefing regarding the application of the Armed Career Criminal Act (ACCA), and I held a hearing regarding the application of the ACCA. [*See* DE 42; DE 48; DE 52; DE 55]. On August 12, 2020, Hatley was sentenced to 180 months imprisonment to be followed by 2 years supervised release. [DE 72].

Hatley appealed his sentence, specifically as it relates to my determination that he is an Armed Career Criminal under the provisions of 18 U.S.C. §924(e). [DE 75]. On March 6, 2023, the Seventh Circuit affirmed Hatley's sentence and my determination that he qualifies as an Armed Career Criminal. [DE 87]. Hatley sought review from the U.S. Supreme Court [7th Cir. DE 41] but the Supreme Court denied his petition. [7th Cir. DE 42]. Thereafter, Hatley timely filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255 which is ripe for my review. [DE 88; *see* DE 90; DE 93; DE 94]. For the reasons explained below, Hatley's motion will be denied.

## Legal Standard

I'll begin by laying out the standards which govern my decision making. Section 2255(a) allows a prisoner who has been sentenced to return to the court in which he was convicted and request his release on the grounds that his sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). A petitioner seeking relief under §2255 faces a tall order. Indeed, such relief is only available "in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021) (quoting *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014)). *See also*, *Coleman v. United States*, 79 F.4th 822, 826 (7th Cir. 2023) (describing relief under §2255 as an "extraordinary remedy and therefore only available in limited circumstances").

## Discussion

With this standard in mind, let's turn to the grounds for relief presented by Mr. Hatley. First, Hatley asserts that his Fifth and Sixth Amendment rights were violated because only a jury, and not the sentencing judge, can decide that his past offenses were committed on different occasions from one another such that the ACCA sentencing enhancement applies. [DE 88 at 4]; *United States v. Rodriguez*, 2022 WL 17883607, at *1 (7th Cir. Dec. 23, 2022) ("The ACCA imposes a 15-year minimum sentence for violations of §922(g) if the offender previously committed three or more serious drug offenses or violent felonies on different occasions."). The Fifth Amendment guarantees that criminal defendants will not be deprived of liberty without "due process of law." U.S. Const. Amend. V. The Sixth Amendment provides that in all criminal prosecutions the accused has "the right to a speedy and public trial, by an impartial jury." U.S. Const. Amend. VI.

Hatley presented his first argument for relief to the Seventh Circuit on appeal. The Seventh Circuit refused to adopt Hatley's position and upheld his sentence. In the opinion upholding his sentence, the Seventh Circuit explained that Hatley's argument is foreclosed by well-established Seventh Circuit precedent. *United States v. Hatley*, 61 F.4th 536, 542 (7th Cir. 2023). In *United States v. Elliott*, 703 F.3d 378 (7th Cir. 2012) the Seventh Circuit held that district judges are empowered to make separate occasions determinations. *Elliott*, 703 F.3d at 381. The Seventh Circuit based its determination on Supreme Court precedent stating that a defendant's recidivism is a sentencing factor

3

that may be found by the sentencing judge, even when recidivism increases the statutory maximum penalty to which the defendant is exposed. *Id*. (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 239 (1998)).

Since the Seventh Circuit issued its decision upholding Hatley's sentence, the Supreme Court issued an opinion explaining that a jury, and not the sentencing judge, must unanimously determine beyond a reasonable doubt that a defendant's past offenses were committed on separate occasions for ACCA purposes. *Erlinger v. United States*, 602 U.S. 821 (2024). Hatley argues that in light of *Erlinger*, his sentence should be vacated and the different occasions question submitted to a jury. Hatley's argument fails for several reasons.

In his concurring opinion, Chief Justice Roberts made clear that while a defendant is entitled to have a jury determine beyond a reasonable doubt whether his predicate offenses were committed on different occasions, any violation of that right is subject to review for harmless error. *Erlinger*, 602 U.S. at 850. A lack of a jury finding for a sentencing enhancement is harmless if it is clear beyond a reasonable doubt that a jury would have found the facts anyway. *United States v. Rodriguez*, 2022 WL 17883607, at *2 (7th Cir. Dec. 23, 2022). In a case decided after *Erlinger*, the Seventh Circuit applied the harmless error standard to the issue of whether the failure to submit the different occasions question to a jury required a new trial before a jury. *See United States v. Johnson*, 114 F.4th 913 (7th Cir. 2024). So harmless error is plainly the correct standard to apply in this situation.

4

The record relating to Hatley's Hobbs Act robberies would undoubtedly convince a reasonable jury that Hatley committed the offenses on different occasions. According to the presentence report from his prior Hobbs Act robbery case [2:12-cr-76, DE 58 at 5-7], Hatley committed Hobbs Act robberies at different businesses on the following dates and locations: September 29, 2011 in Gary, Indiana; October 11, 2011 in Gary, Indiana; October 25, 2011 in Merrillville, Indiana and Gary, Indiana; November 3, 2011 in Gary, Indiana; February 2, 2012 in Hammond, Indiana; February 13, 2012 in Merrillville, Indiana; and February 14, 2012 in Merrillville, Indiana. [*Id.*] These robberies occurred on different dates, at different businesses, and at different locations. They, of course, occurred on separate occasions.

What's more, we know that these were robberies committed on occasions different from one another because Hatley *admitted to that fact* in his plea agreement in this case. [DE 33 at 7]. In the plea agreement, Hatley averred that he had "eight convictions for separate and distinct robberies committed on occasions different from one another in Cause Number 2:12 CR 76." [*Id.*] With this admission, it is clear beyond a reasonable doubt that a properly instructed jury would have found the separate occasions question against him. So, while Hatley is correct that *Erlinger* supports his assertion that a jury and not a judge should determine whether his offenses occurred on occasions separate from one another for purposes of the ACCA, the fact that I made the determination in this instance and not a jury amounts to harmless error.

5

Moreover, my determination that Hatley's eight prior Hobbs Act robbery convictions were committed on separate occasions did not impact his sentence because even if these convictions were considered only one crime, Hatley would still qualify as an armed career criminal. This is because in 2010, Hatley was convicted of robbery when he and an associate robbed a man of his cell phone. [DE 67 at ¶29]. And in 2012, Hatley pled guilty to Battery Resulting in Bodily Injury after taking a detention officer hostage, injuring him, and threatening to kill him while in custody at the Porter County Juvenile Detention Center. [*Id*. at ¶31]. Without objection from Hatley, the PSR found both offenses to be crimes of violence. [*Id*.] All of which is to say that even if we assume the slew of Hobbs Act robberies committed by Hatley in 2011 and 2012 were somehow only one crime of violence for ACCA purposes, it matters not because when combined with these two additional violent felonies, Hatley would nevertheless be deemed an armed career criminal. *United States v. Goodpasture*, 595 F.3d 670, 670 (7th Cir. 2010) (explaining that an armed career criminal is any person who has three previous convictions for a violent felony or serious drug offense). Thus, my determination that Hatley's eight prior Hobbs Act robbery convictions occurred on separate occasions did not impact the selection of his sentence. *United States v. Glosser*, 623 F.3d 413, 419 (7th Cir. 2010) ("An error is harmless when the error did not affect the district court's selection of the sentence imposed.").

Hatley raises two other arguments in his Section 2255 petition. But as explained by the Government, Hatley waived his right to raise his final two arguments as they do

not relate to ineffective assistance of counsel or §924(e). [DE 90 at 6]; [*See* DE 33 ¶7(f) and (g)]. *See also*, *Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016) ("As part of a plea agreement, a defendant may validly waive his right to challenge his conviction and sentence on direct appeal or collateral review under 28 U.S.C. § 2255."). However, I will briefly discuss each argument as they were discussed by the parties in their briefing.

In Hatley's second argument for relief, Hatley argues that his conviction and sentence pursuant to a violation of 18 U.S.C. §922(g)(1) violates his Second Amendment rights because his "carrying a handgun publicly for self-defense falls within the Second Amendment's plain language." [DE 88 at 5]. The Second Amendment states:

> A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. Amend. II.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008) the Supreme Court identified the "core" of the Second Amendment as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 634–35. The Court in *Heller* made clear that "the right secured by the Second Amendment is not unlimited" and emphasized that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id*. at 626. A plurality of the Supreme Court in *McDonald v. City of Chicago* later repeated *Heller*'s assurances that the Court's rulings "did not cast doubt on such longstanding regulatory

7

measures as prohibitions on the possession of firearms by felons[.]" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

Following the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) the proper way to determine the constitutionality of a firearm regulation is to show that the regulation is "consistent with this Nation's historical tradition of firearm regulation." *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023) (quoting *Bruen*, 142 S. Ct. at 2126). Nevertheless, *Bruen*, citing *Heller* and *McDonald*, continued to describe the Second and Fourteenth Amendments as protecting "the right of an ordinary, *law-abiding* citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–9 (emphasis added). The notion that this Second Amendment right protects "law-abiding, adult citizens" is repeated throughout Justice Thomas' opinion. *Id.* at 9, 15, 26, 30–31, 38, 60, 70–71. Justice Alito's concurrence noted "[a]ll that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense[.]" *Id.* at 76 (Alito, J., concurring). And Justice Kavanaugh's concurrence quoted *Heller*'s instruction that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.* at 81

As explained by the Government in its response brief, courts in this district have repeatedly determined that 18 U.S.C. §922(g)(1)'s prohibition on felons possessing firearms is constitutional following *Bruen*. [DE 90 at 10 n.3]. Courts outside of this circuit have also unequivocally found that §922(g)(1) is consistent with this nation's

8

tradition of firearm regulation. *United States v. Duarte*, 137 F.4th 743, 761 (9th Cir. 2025) (explaining that § 922(g)(1)'s permanent and categorical disarmament of felons is consistent with this Nation's historical tradition of firearm regulations); *United States v. Gailes*, 118 F.4th 822, 828 (6th Cir. 2024) (explaining that convicted felons may be categorically disarmed under §922(g)(1) based on our nation's history and tradition of firearm regulations); *Zherka v. Bondi*, 2025 WL 1618440, at *5 (2d Cir. June 9, 2025) (explaining that §922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons following *Bruen*).

It is true the Seventh Circuit has not definitively answered the question of § 922(g)(1)'s constitutionality post *Bruen*. In *Atkinson v. Garland*, 70 F4th 1018 (7th Cir. 2023) the Seventh Circuit remanded on the issue of whether convicted felons are protected by the plain text of the Second Amendment so that the district court could conduct new analysis consistent with *Bruen*. But as recently as April 2024, the Circuit commented that arguments that the Second Amendment permits felons to possess firearms were "hard to square" with *Heller*, *McDonald*, and even *Bruen* itself. *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). The Seventh Circuit heard arguments in December 2024 to determine the question of whether § 922(g)(1) violates the constitution. *See United States v. Prince*, No. 23-3155 (7th Cir. argued Dec. 11, 2024). We await a decision in that case.

Without further direction from the Circuit on the issue, I join all my colleagues in this District who have upheld the constitutionality of 18 U.S.C. § 922(g)(1) post *Bruen*

9

and *Rahimi*. *See United States v. Regalado*, 709 F.Supp.3d 619 (N.D. Ind. 2023) (Leichty, J.); *United States v. Williams*, 2024 WL 1528653 (N.D. Ind. Apr. 9, 2024) (DeGuilio, J.); *United States v. Eason*, 2024 WL 639350 (N.D. Ind. Feb. 15, 2024) (Brady, C.J.); *United States v. Garcia*, 2024 WL 1174045 (N.D. Ind. Mar. 19, 2024) (Simon, J.); *United States v. Hill*, 2024 WL 3043307 (N.D. Ind. Jun. 18, 2024) (Moody, J.); *United States v. Razo*, 2024 WL 3291762 (N.D. Ind. Jul. 3, 2024) (Lund, J.). To hold otherwise would ignore both the distinct contexts in which the Supreme Court analyzed the scope of Second Amendment protections in *Bruen* and *Heller*, as well as its repeated statements reaffirming that the Second Amendment only protects law abiding, responsible citizens. In short, if the Supreme Court didn't mean what it said in those earlier cases, it is for that Court to say so.

In sum, based on the repeated clear language of the Supreme Court, it is plain to me that people who have been adjudicated as felons simply do not fall into a class of citizens protected by the Second Amendment. That is especially true of felons like Hatley who has racked up an impressive resume of felonies—nine robberies, an escape, and a serous battery. [*See* DE 67 at 6-7.] So even if the Supreme Court ultimately takes the tack suggested by then-Circuit Judge Barrett in *Kanter v. Barr*—that only "dangerous" felons can be constitutionally disarmed, 919 F.3d 437, 451 (Barrett, J., dissenting)—it would not redound to Hatley's benefit. In other words, even if I have to consider the *type of felony* in a felon in possession case to determine whether the Second

10

Amendment applies, I am confident that violent felons like Hatley will not retain Second Amendment rights.

Hatley's third ground for relief states that I failed to consider his "extensive mental deficiency" and "erred in not factoring in the circumstances that befit a downward variance." [DE 88 at 7]. Prior to Hatley's sentencing I reviewed his Presentence Investigation Report which detailed his mental health issues. The Mental and Emotional Health section of the report detailed that Hatley had an Individualized Education Plan (IEP) during grade school and that he received counseling following the death of his father, and again following the death of his aunt. [DE 67 at ¶ 45]. The report also detailed that Hatley was diagnosed with Depressive Disorder, Generalized Anxiety Disorder, and Disruptive Behavior Disorder in 2011. [*Id.* at ¶ 46]. During Hatley's sentencing I discussed his mental deficiencies on the record.

> The Court: You know, I note his dad died in an accident when he was present. He was a very young kid. Basically has no relationship with his mom who has 11 felony convictions on her own. He had substantial behavioral problems in school. He was on an IEP. By the way, not surprisingly substantial behavior problems in school. He was deemed emotionally handicap and some serious underlying mental health problems, surely the result of the circumstances under which he was raised.

[DE 84 at 7].

Hatley's mental deficiencies were certainly something I considered during his sentencing. However, just because Hatley's mental health issues were considered does not automatically mean they justify a lower sentence. *See e.g.*, *United States v. Donelli*,

11

747 F.3d 936, 940 (7th Cir. 2014) (explaining that a defendant's mental illness does not automatically warrant a lesser sentence and in some cases warrant a longer sentence); *United States v. Lucas*, 670 F.3d 784, 793 (7th Cir. 2012) (explaining that a district court is not required to accept a defendant's argument that a mitigating factor warrants a lower sentence). As explained to Hatley during his sentencing, once he was deemed an Armed Career Criminal, he faced a 180-month mandatory minimum sentence. [DE 84 at 7-8]; *See also* 18 U.S.C. §924(e)(1). During sentencing, I explained to Mr. Hatley that absent the ACCA I would not have imposed a 180-month sentence.

> The Court: I can tell you flat out there's no conceivable way I would have given . . . you a sentence of 180 months but for the application of the Armed Career Criminal Act.

[DE 84 at 6].

Hatley's mental health issues were taken into consideration during his sentencing but did not extricate him from the minimum sentence required by law. *See* 18 U.S.C. §924(e)(1). The mandatory minimum is precisely the sentence I imposed. Hatley's argument that his mental deficiencies were not considered does not justify the relief requested.

### Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Dalton v. Battaglia*, 402 F.3d 729, 738 (7th Cir. 2005). For the reasons set forth above, I find no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c)(2). If Hatley wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure Rule 22.

**ACCORDINGLY**:

Defendant Lavelle Hatley's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. §2255 [DE 88] is **DENIED** and a Certificate of Appealability is also **DENIED**.

**SO ORDERED**.

ENTERED: June 26, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT